IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES JACKSON, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:07-CV-00163<br><br>Judge Clark Waddoups |

## INTRODUCTION

Plaintiff American National Property and Casualty Company ("ANPAC") insures Defendants James Jackson ("James"), Sherrie Jackson ("Sherrie") and Michael Jackson ("Michael") under Policy No. 43-H-N39-644-0 (the "Policy"), a Utah Special Homeowners Policy. ANPAC seeks a judicial determination that the Policy does not provide personal liability coverage for a lawsuit filed against James, Sherrie and their children, Michael and Amie Jackson Carpenter ("Amie") in the Second Judicial District Court, Davis County, State of Utah, styled *Nelson v. Jackson, et al*, Case No. 070700234 (the "Underlying Lawsuit"). For the reasons discussed below, the court grants in part and denies in part ANPAC's motion for summary judgment.

## BACKGROUND FACTS

### I. THE ALLEGED MISCONDUCT

At the time of these events, S.R.C., a minor, lived in Centerville, Utah.[1] During a period of several months beginning in or around November 1999 and concluding in May 2000, Michael engaged in multiple acts of physical sexual touching upon S.R.C., his then five-year-old niece.[2] This sexual misconduct occurred while S.R.C. was visiting the home of her maternal grandparents, James and Sherrie, in Layton, Utah.[3] In April 2001, Michael was charged with two first-degree felonies: Sodomy Upon a Child[4] and Aggravated Sexual Abuse of a Child.[5] In January 2002, he pled guilty to two counts of Attempted Sexual Abuse,[6] a third degree felony.[7]

During periods of visitation beginning in April 2001 and continuing until April 2002, James, Sherrie and S.R.C.'s mother, Amie, purportedly told S.R.C. that "she would suffer severe personal, physical, financial and legal consequences"[8] if she did not recant her statements regarding Michael's sexual misconduct.[9] As a result of this alleged intimidation and manipulation, S.R.C. recanted her

---

[1] Second Am. Compl., ¶¶ 1–3 (Docket No. 33, Ex. A).

[2] *Id*. ¶ 12.

[3] *Id*. ¶ 13.

[4] Utah Code Ann. § 76-5-403.1 (West 2008).

[5] *Id*. § 76-5-404.1(3) (West 2007).

[6] *Id*. § 76-5-404.1(1).

[7] Second Am. Compl., ¶¶ 15–16.

[8] *Id*. ¶ 18.

[9] *Id*. ¶¶ 17–20.

statements in April 2002, claiming that her father had persuaded her to falsely accuse Michael.[10] In June 2002, the court set aside Michael's prior guilty pleas.[11] Some time thereafter, Davis County prosecutors charged James with threatening, coercing or otherwise manipulating S.R.C. into recanting her allegations.[12] Michael was subsequently re-charged with two counts of Child Abuse,[13] a class A misdemeanor.[14] In answer to these charges, Michael entered an *Alford* plea[15] to one count of Attempted Sexual Abuse, a third degree felony.[16]

## II. THE UNDERLYING LAWSUIT

On May 13, 2008, Dolores Hansen Nelson ("Dolores") and Darrell Carpenter ("Darrell"), S.R.C.'s legal guardians, filed the Second Amended Complaint (the "Complaint") in the Underlying Lawsuit on behalf of S.R.C.[17] The plaintiffs allege thirteen causes of action against James, Sherrie, Michael and Amie based on theories of intentional tort, negligence, breach of statutory duty and concealment.[18] These thirteen causes of action focus on two general areas of misconduct: (1)

---

[10] *Id.* ¶¶ 21–23.

[11] *Id.* ¶ 25.

[12] *Id.* ¶ 26.

[13] Utah Code Ann. § 76-5-109(2)(c) (West 2008).

[14] Second Am. Compl., ¶ 27.

[15] "By entering an *Alford* plea, a defendant does not admit guilt. Rather, the defendant enters a guilty plea because he recognizes that a prosecutor has enough evidence to obtain a guilty verdict." *Utah v. Ott*, 2010 UT 1, ¶ 9 n.2.

[16] Second Am. Compl., ¶ 28. Although the Complaint asserts that Michael was charged with two class A misdemeanor but pled to a felony, this discrepancy is irrelevant to the court's analysis.

[17] *Id.* at 27.

[18] *Id.* ¶¶ 32–114.

behavior surrounding and including Michael's sexual misconduct, and (2) threats and manipulation leading to S.R.C.'s recantation.[19]

## III. THE ANPAC CONTRACT OF INSURANCE

Prior to the alleged misconduct, ANPAC issued the Policy to James and Sherrie.[20] As part of its personal liability coverage, ANPAC makes the following guarantee:

> If a claim is made or a suit is brought against any **insured**[21] for damages because of **bodily injury**[22] or **property damage** to which this coverage applies, we will:
> a.  pay up to our **limit of liability** for the damages for which the **insured** is legally liable; and
> b.  provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the **occurrence** equals our **limit of liability**.[23]

Significantly, several exclusions qualify this guarantee of personal liability coverage. For purposes of ANPAC's motion for summary judgment, there are three dispositive exclusions:

---

[19]*Id*.

[20]Pl.'s Mem. in Supp. of Mot. for Summ. J., 2.

[21]The Policy defines "insured" as "you and the following residents of your household:
a.   your relatives;
b.   any other person under the age of 21 who is in the care of any person named above."
ANPAC Policy, 1 (Docket No. 33, Ex. B).
Amie was not a resident of James and Sherrie's home at the time of the alleged misconduct. Therefore, she is not covered by the Policy, and ANPAC has no duty to defend her against any of the Complaint's claims.

[22]The Policy denies personal liability coverage for "**bodily injury** to you and any **insured** within the meaning of part a. or b. of definition 5. '**insured**'[.]" *Id*. at 12. The question of whether S.R.C. was "in the care" of the insured is a genuine issue as to a material fact. Consequently, summary judgment in favor of the plaintiff is inappropriate on the ground that the Policy excludes S.R.C.'s bodily injuries as those to an insured.

[23]*Id*. at 10 (emphasis original).

4

Personal Liability . . . [does] not apply to bodily injury or property damage:
- a. which is expected or intended by any **insured**; even if the actual injury or damage is different than expected or intended; ("Exclusion A")

    . . . .
- d. which results from sexual misconduct, whether any **insured** participated in committing any sexual misconduct or remained passive after having knowledge of any sexual misconduct. Sexual misconduct means physical or mental harassment or assault of a sexual nature against any person. ("Exclusion D")

    . . . .
- p. arising out of any criminal act committed by or at the direction of any **insured**.[24] ("Exclusion P")

## ANALYSIS

### I. STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate if the moving party demonstrates that 'there is no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'"[25] The court views the evidence in the light most favorable to the non-moving party, "and all justifiable inferences are to be drawn in the [nonmovant's] favor."[26] Summary judgment must be entered "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[27]

---

[24] *Id.* at 10–11.

[25] *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 944 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

[27] *Orenduff*, 548 F.3d at 944 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

5

## II. STANDARD FOR THE DUTY TO DEFEND AND INDEMNIFY

"An insurance policy is a contract between the insurer and the insured and, accordingly, is subject to the general rules of contract construction."[28] The court "interpret[s] words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole."[29] Utah courts have also recognized that insurers "may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."[30] Furthermore, whether an insurance policy is ambiguous is a question of law. A policy may be ambiguous "if it is unclear, omits terms, has multiple meanings, or is not plain to a person of ordinary intelligence and understanding."[31] "If a policy is ambiguous, it is construed liberally in favor of the insured so as to promote the purposes of insurance."[32]

Logically, "an insurer's duty to defend is broader than its duty to indemnify."[33] The court determines whether the duty to defend arises by comparing the language of the insurance policy with the allegations of the complaint.[34] "When those allegations, if proved, could result in liability under

---

[28] *S.W. Energy Corp. v. Continental Ins. Co.*, 1999 UT 23, ¶ 12, 974 P.2d 1239, 1242.

[29] *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 5, 980 P.2d 685, 686 (citation omitted).

[30] *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1275 (Utah 1993) (internal quotations omitted).

[31] *Crook*, 1999 UT 47, ¶ 6 (citation omitted).

[32] *S.W. Energy Corp.*, 1999 UT 23, ¶ 12 (citation omitted).

[33] *Sharon Steel v. Aetna Cas. & Sur.*, 931 P.2d 127, 133 (Utah 1997).

[34] *Fire Ins. Exch. v. Estate of Therkelsen*, 2001 UT 48, ¶ 21, 27 P.3d 555, 560 (citations omitted).

the policy, then the insurer has a duty to defend."[35]  Conversely, where there is no potential liability, there is no duty to defend any underlying lawsuit.[36]

## III. INTERPRETATION OF THE POLICY

### A. Bodily Injury

For potential liability to exist in the Underlying Lawsuit, S.R.C. must have suffered bodily injury.  The Policy defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services, and death resulting therefrom."[37]  Eleven of the thirteen causes of action included in the Complaint allege that S.R.C. "has suffered damages, including, but not limited to physical, emotional, mental, and sexual abuse of a minor child."[38]  The remaining two causes of action make similar claims regarding S.R.C.'s physical injuries.[39]  Additionally, the Complaint alleges that S.R.C. suffers chronic post-traumatic stress disorder ("PTSD"), obsessive compulsive disorder ("OCD"), nightmares, flashbacks, extreme emotional trauma, mental anguish, pain and suffering.[40]

Of course, all physical injuries associated with Michael's sexual misconduct are bodily injuries.  It is uncertain, however, whether S.R.C.'s remaining injuries amount to bodily injuries

---

[35] *Sharon Steel*, 931 P.2d at 133 (citation omitted).

[36] *Deseret Fed. Sav. & Loan Ass'n v. United States Fidelity & Guar. Co.*, 714 P.2d 1143, 1147 (Utah 1986) (citations omitted).

[37] ANPAC Policy, 10–11.

[38] Second Am. Compl., ¶¶ 35, 40, 47, 54, 59, 65, 73, 80, 87, 96, 101.

[39] *Id*. ¶¶ 69, 104, 106.

[40] *Id*. ¶¶ 108, 110, 112.

within the Policy's definition. The Utah Supreme Court has not addressed the question of whether claims for emotional or psychological injuries constitute claims for "bodily injury," although it has noted that at least one insurer has treated them as such.[41] To be sure, most jurisdictions hold that the term "bodily injury" does not encompass *purely* emotional harm.[42] Nevertheless, many of these jurisdictions also recognize that "emotional distress with appreciable physical manifestations can qualify as a 'bodily injury' within the meaning of [an] insurance policy."[43] Thus, if appreciable physical manifestations accompany the PTSD, OCD and emotional distress alleged in the Complaint, they too, in addition to the injuries from Michael's sexual misconduct, constitute cognizable bodily injuries within the Policy's definition.

According to the National Institute of Mental Health ("NIMH"), symptoms of PTSD often include physical symptoms like difficulty eating and sleeping, a racing heart and sweating.[44] As similarly reported by the NIMH, symptoms of OCD may include physical rituals, mental rituals that interfere with normal physical processes, and eating disorders.[45] Viewing the evidence in the light

---

[41]*Progressive Cas. Ins. Co. v. Ewart*, 2007 UT 52, n.15, 167 P.3d 1011, 1015 n.15

[42]*National Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P.2d 741, 746 (Colo. 1992) (citations omitted).

[43]*Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn. 1993); *see also Trinity Universal Ins. Co. v. Cowan*, 906 S.W.2d 124, 130–32 (Tex. App. Austin 1995), writ granted, (June 14, 1996) and judgment rev'd on other grounds, 945 S.W.2d 819, 825 (Tex. 1997) (although pure mental anguish may not constitute bodily injury, resulting "physical manifestations" such as "headaches, stomachaches, and loss of sleep" trigger bodily injury coverage).

[44]NIMH, U.S. Department of Health and Human Services, What Are the Symptoms of PTSD? (last visited June 4, 2010), http://www.nimh.nih.gov/health/publications/post-traumatic-stress-disorder-ptsd/what-are-the-symptoms-of-ptsd.shtml.

[45]NIMH, U.S. Department of Health and Human Services, What Are the Symptoms of OCD? (last visited June 4, 2010), http://www.nimh.nih.gov/health/topics/obsessive-compulsive-disorder-ocd/index.shtml.

most favorable to the non-moving party, the court cannot hold as a matter of law that the Complaint's claims of PTSD, OCD and other emotional distress do not constitute bodily injuries. Consequently, ANPAC's Motion for Summary Judgment depends entirely upon whether the claims made in the Complaint fall within the Policy's exclusions.

B.      **Exclusion P: Bodily Injury Arising Out of Any Criminal Act**

Exclusion P denies personal liability coverage for bodily injury "arising out of any criminal act committed by or at the direction of any insured."[46] In the context of liability insurance contracts, Utah courts have construed the phrase "arising out of" broadly:

> [T]he term "arising out of" is ordinarily understood to mean originating from, incident to, or in connection with the item in question.
> . . . As used in a liability insurance policy, the words "arising out of" are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of or flowing from, and require only that there be some causal relationship between injury and the risk for which the coverage is provided.[47]

Given this expansive definition, the court cannot find the phrase "arising out of" to be ambiguous, despite the fact that exclusionary clauses in insurance contracts are strictly construed against the insurer and in favor of coverage.[48]

Comparing the allegations of the Complaint with the language of Exclusion P and the Utah courts' interpretation of the phrase "arising out of," it is evident that the Policy does not provide liability coverage for any bodily injury "originating from, incident to, or in connection with" the

---

[46] ANPAC Policy, 11.

[47] *Meadow Valley Contractors, Inc. v. Transcontinental Ins. Co.*, 2001 UT App 190, ¶ 14, 27 P.3d 594, 597 (quoting *Viking Ins. Co. Of Wis. v. Coleman*, 927 P.2d 661, 663 (Utah Ct. App. 1996) (quoting *National Farmers Union Prop. & Cas. Co. v. Western Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978) (citations and internal quotations omitted))).

[48] *Taylor v. American Fire & Cas. Co.*, 925 P.2d 1279, 1282 (Utah Ct. App. 1996) (citing *LDS Hospital v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988)).

9

behavior surrounding and including Michael's sexual misconduct. Michael, an insured, committed a criminal act. As a result, any bodily injury with the requisite causal relationship to his sexual misconduct inescapably arises therefrom. It is irrelevant that James and Sherrie did not participate in the sexual misconduct. Exclusion P precludes coverage of them too since it focuses on the bodily injury and its requisite causal connection to the underlying criminal act, rather than on the actors themselves.[49]

At this stage in the proceedings, however, it is unclear whether the causal connection that Exclusion P requires exists between Michael's sexual misconduct and all of the bodily injuries alleged in the Complaint. Here, there are two potential sources of bodily injury: (1) the behavior surrounding and including Michael's sexual misconduct, and (2) the alleged threats and manipulation leading to S.R.C.'s recantation. Where there is more than one potential source of several bodily injuries, Utah courts determine the degree of independence between the potential sources. In essence, they ask whether but for the excluded source of bodily injury, the plaintiffs of the Underlying Lawsuit would have a cause of action.[50]

Viewing the evidence in the light most favorable to the non-moving party, the court concludes that the behavior surrounding and including Michael's sexual misconduct is independent from the purported threats and manipulation leading to S.R.C.'s recantation. It reaches this conclusion for several reasons. First, the alleged threats and manipulation began almost a full year after the sexual misconduct had ended. The sexual misconduct ceased in May 2000, and the

---

[49] ANPAC Policy, 11.

[50] *Taylor*, 925 P.2d at 1283 (Utah Ct. App. 1996) (citations omitted); *Essex Ins. Co. v. Wake Up Too, Inc.*, No. 2:07CV312 DAK, 2009 U.S. Dist. LEXIS 13086, at *21–22 (D. Utah Feb. 12, 2009) (citations omitted).

purported threats and manipulation did not begin until April 2001.[51] Second, whereas Michael alone engaged in sexual misconduct, James, Sherrie and Amie were primarily responsible for the purported threats and manipulation. Third, the nature of the conduct itself is radically different between the two potential sources of bodily injury, the sexual misconduct on one hand as compared with the alleged threats and manipulation on the other. Fourth, liability for the purported threats and manipulation does not depend upon proof that Michael's sexual misconduct actually occurred. Fifth, independent of any sexual misconduct, telling a young child that "she would suffer severe personal, physical, financial and legal consequences"[52] if she did not recant accusations of sexual misconduct could lead to some of the very bodily injuries alleged in the Complaint, such as PTSD and OCD. As a result, bodily injuries associated with the alleged threats and manipulation leading to S.R.C.'s recantation did not arise out of any criminal act committed by any insured. Therefore, Exclusion P does not preclude coverage for those causes of action that allege bodily injury based on threats and manipulation.

Despite the court's distinction between the two potential sources of bodily injury to the Complaint, it is clear that Exclusion P nevertheless precludes coverage for nearly all of the thirteen causes of action. Because their allegations are so inextricably intertwined with the sexual misconduct so as to arise out of a criminal act committed by an insured, there is no coverage of any insured for the Second Cause of Action (Negligence Per Se), the Third Cause of Action (Negligent Entrustment as to Defendants Sherry [sic] Jackson and James Jackson), the Fifth Cause of Action (Negligent Assumption of Risk of Intentional or Criminal Conduct), the Sixth Cause of Action

---

[51]Second Am. Compl., ¶¶ 12, 17.

[52]*Id*. ¶ 18.

11

(Negligent Misrepresentation and Risk of Physical Harm), the Eighth Cause of Action (Assault & Battery of a Minor Child), the Ninth Cause of Action (Sexual Assault and Battery of a Minor Child), the Tenth Cause of Action (Breach of Statutory Duty to Prevent Child Abuse) and the Thirteenth Cause of Action (Seduction and Injury of a Minor) (collectively the "Sexual Misconduct Causes of Action").[53]

Additionally, Exclusion P denies coverage of all insureds for the First Cause of Action (Negligence), the Fourth Cause of Action (Negligent Infliction of Emotional Distress), the Eleventh Cause of Action (Intentional Infliction of Emotional Distress), the Fourteenth Cause of Action (Gross Negligence and Exemplary Damages) (collectively the "Mixed Causes of Action") and the Twelfth Cause of Action (Civil Conspiracy) insofar as these causes of action relate to bodily injury "originating from, incident to, or in connection with" the behavior surrounding and including Michael's sexual misconduct.[54] To the extent that the Mixed Causes of Action and the Twelfth Cause of Action (Civil Conspiracy) are based on bodily injuries in connection with the alleged threats and manipulation leading to S.R.C.'s recantation, however, Exclusion P does not apply.

### C. Exclusion D: Bodily Injury Which Results from Sexual Misconduct

Exclusion D precludes personal liability coverage for bodily injury which "results from sexual misconduct."[55] Unlike the phrase "arising out of," Utah courts have not yet interpreted the

---

[53]*Id.* ¶¶ 37–48, 56–81, 98–102.

[54]*Id.* ¶¶ 32–36, 49–55, 82–97, 103–07.

[55]ANPAC Policy, 10. This phrase defines the scope of Exclusion D. The phrase "whether any insured participated in committing any sexual misconduct or remained passive after having knowledge of any sexual misconduct" must be interpreted as exemplifying two potential situations that result from sexual misconduct rather than limiting the preceding exclusionary phrase to just these two situations. It was surely not ANPAC's intention to exclude coverage for passive conduct after having knowledge of any sexual misconduct while still preserving coverage for active conduct

12

phrase "results from" in the context of liability insurance contracts. There are, however, at least two interpretations of this phrase in other jurisdictions. The majority view is that "[t]he words 'arising from' are synonymous with the words 'resulting from'."[56] In contrast, the minority view is that "the term 'resulting from' is narrower than 'arising out of.'"[57] The minority view defines "results from" as a "reasonably apparent" causal connection to or "a natural and reasonable incident or consequence of" the stated contingency.[58]

The terms of an insurance policy may be ambiguous if they are subject to more than one legitimate interpretation.[59] Without guidance from Utah courts, and given the fact that "results from" is subject to more than one interpretation, the court finds the term "results from" is ambiguous in the context of Exclusion D. "If a policy is ambiguous, it is construed liberally in favor of the insured so as to promote the purposes of insurance."[60] Construing Exclusion D more narrowly promotes greater coverage. Therefore, for purposes of Exclusion D, the court interprets "results from" to be narrower than "arising out of" and that it means a "reasonably apparent" causal connection to or "a natural and reasonable incident or consequence of" sexual misconduct. This interpretation is

---

after having knowledge of any sexual misconduct.

[56]*Crane Towing, Inc. v. Gorton*, 570 P.2d 428, 435 (Wash. 1977) (citation omitted); *see also St. Paul Fire & Marine Ins. Co. v. Antel Corp.*, 899 N.E.2d 1167, 1175 (Ill. Ct. App. 2008) (citations omitted); *HK Systems, Inc. v. Eaton Corp.*, No. 02C1103, 2006 U.S. Dist. Lexis 33695, at *7 (E.D. Wisc. May 24, 2006) (citation omitted); *Gateway Ins. Co. v. Security Taxicab, Inc.*, No. 5:02CV-237-R, 2003 U.S. Dist Lexis 27536, at *28 (W.D. Ky. June 19, 2003) (citation omitted).

[57]*Poage v. State Farm Fire & Cas. Co.*, 203 S.W.3d 781, 785 (Mo. Ct. App. 2006).

[58]*Id.* at 787.

[59]*Crook*, 1999 UT 47, ¶ 6 (citation omitted).

[60]*S.W. Energy Corp.*, 1999 UT 23, ¶ 12 (citation omitted).

consistent with the purposes of insurance and the Policy as a whole. The Policy uses the phrase "arising out of" in many of its coverage exclusions and the phrase "results from" only in Exclusion D.[61] As it does with questions of statutory construction, the court presumes that the drafter of a liability insurance contract used each word advisedly and that different words within otherwise similar clauses imply different meanings.[62] By choosing the phrase "results from" rather than "arising out of," ANPAC implied a different breadth for Exclusion D than it did for other exclusionary provisions. This narrow construction of "results from" merely recognizes that implication.

Despite this narrower construction of "results from," however, the reach of Exclusion D is similar to that of Exclusion P. The Complaint alleges bodily injuries that have a "reasonably apparent" causal connection to and are "a natural and reasonable incident or consequence of" Michael's sexual misconduct.[63] Therefore, there is no coverage of any insured for the Sexual Misconduct Causes of Action.[64] Again, similar to Exclusion P, Exclusion D denies coverage of all insureds for the Mixed Causes of Action and the Twelfth Cause of Action (Civil Conspiracy) insofar as these causes of action relate to bodily injury that has a "reasonably apparent" causal connection to or is "a natural and reasonable incident or consequence of" sexual misconduct.[65] To the extent that the Mixed Causes of Action and the Twelfth Cause of Action (Civil Conspiracy) are based on

---

[61]ANPAC Policy, 10–11.

[62]*Meadow Valley Contractors*, 2001 UT App 190, ¶ 17.

[63]Second Am. Compl., ¶¶ 12, 17.

[64]*Id*. ¶¶ 37–48, 56–81, 98–102.

[65]*Id*. ¶¶ 32–36, 49–55, 82–97, 103–07.

14

bodily injury in connection with the alleged threats and manipulation leading to S.R.C.'s recantation, however, Exclusion D does not apply. The alleged threats and manipulation do not constitute sexual misconduct within the definition of Exclusion D because they were not "of a sexual nature."[66] As a result, bodily injury attributable to the alleged threats and manipulation does not have a "reasonably apparent" causal connection to nor is it "a natural and reasonable incident or consequence of" Michael's sexual misconduct. Therefore, Exclusion D does not bar all liability for coverage of James and Sherrie.

D.  **Exclusion A: Bodily Injury Which Is Intended or Expected**

Exclusion A precludes personal liability coverage for bodily injury "which is expected or intended by any insured."[67] Comparing this language with that of the Complaint, Exclusion A bars coverage for at least four and potentially five of the thirteen causes of action. The Eighth Cause of Action (Assault & Battery of a Minor Child), and the Ninth Cause of Action (Sexual Assault and Battery of a Minor Child), address and are limited to Michael's alleged sexual misconduct.[68] As a relative and resident of James and Sherrie's home, Michael was an insured. Because his actions were unambiguously intentional, the Policy's personal liability coverage does not reach these two causes of action. Similarly, Exclusion A precludes coverage of the Twelfth Cause of Action (Civil Conspiracy) since the first element of this claim requires a showing of agreement among the insureds

---

[66] ANPAC Policy, 10.

[67] *Id.* at 10.

[68] Second Am. Compl., ¶¶ 67–74.

15

to inflict bodily injury. Therefore, this cause of action alleges bodily injury that is necessarily intentional.[69]

The Eleventh Cause of Action is for Intentional Infliction of Emotional Distress. As its name suggest, this cause of action requires proof of intentional injury.[70] Therefore, the Policy normally would provide no coverage for any of the insureds under this cause of action. As discussed below, however, ANPAC must defend James and Sherrie under this cause of action despite Exclusion A because the claim of intentional infliction of emotional distress is pled in the alternative to the claim against James and Sherrie for negligent infliction of emotional distress. ANPAC owes no duty to defend Michael, however, under this cause of action.

Lastly, insofar as the Fourteenth Cause of Action (Gross Negligence and Exemplary Damages), relies on a showing of "willful and malicious or intentionally fraudulent conduct,"[71] Exclusion A also denies coverage here. Again, James, Sherrie and Michael were insureds, and this exclusion consequently bars any of their expected or intended bodily injuries to S.R.C. To the extent, however, that the Fourteenth Cause of Action is based on "reckless disregard for the health, safety, and welfare"[72] of S.R.C., Exclusion A does not preclude coverage for James and Sherrie under this claim.

---

[69]Unlike the intentional infliction of emotional distress claim, there is no negligent alternative claim to civil conspiracy. Therefore, as discussed below, ANPAC owes no duty to defend the Twelfth Cause of Action.

[70]*Id*. ¶¶ 82–88.

[71]*Id*. ¶ 106.

[72]*Id*. ¶ 105.

## IV. EXCLUDED AND NON-EXCLUDED CLAIMS

The Utah Supreme Court addressed the duty to defend covered and non-covered claims in *Benjamin v. Amica Mut. Ins. Co.*[73] In that case, two co-workers of Benjamin filed separate suits against him, claiming that he had sexually assaulted them. Both women asserted identical claims, including claims for intentional infliction of emotional distress and, in the alternative, negligent infliction of emotional distress.[74] "Benjamin tendered the defense of both cases to Amica."[75] Despite the complaints pleading both intentional and unintentional tort claims, Amica ultimately denied coverage based on a policy exclusion for "bodily injury . . . [w]hich is expected or intended by the insured."[76] The Utah Supreme Court ruled the denial of coverage under this exclusion was improper because "[w]hen there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage."[77]

At the core of the *Benjamin* decision is alternative pleading of covered and non-covered claims, intentional infliction of emotional distress on one hand and negligent infliction of emotional distress on the other. Under the facts of *Benjamin*, a jury could have reasonably found that Benjamin merely acted negligently rather than intentionally.[78] Hence, the Court logically concluded that Amica

---

[73] 2006 UT 37, 140 P.3d 1210.

[74] *Id.* ¶ 2.

[75] *Id.* ¶ 5.

[76] *Id.* ¶ 17 (alterations in original).

[77] *Id.* ¶ 25 (quotations and citation omitted).

[78] In fact, a jury in one of the cases did find that Benjamin merely acted negligently rather than intentionally. *Id.* ¶ 7. The other case settled before trial. *See id.* ¶ 8.

17

had a duty to defend all claims until it was resolved whether Benjamin's actions were intentional or unintentional. Notably, *Benjamin* involved only one alleged wrongdoer, one source of conduct (the alleged sexual assaults) and one policy exclusion.

There are claims in the instant case that are distinguishable from those in *Benjamin*. Rather than merely asserting alternative theories of liability for the same conduct, there are causes of action in the Underlying Lawsuit that address two entirely independent sources of conduct, Michael's sexual misconduct on one hand and the alleged threats and manipulation on the other. Additionally, there are multiple wrongdoers and multiple exclusions that affect potential liability for coverage of these causes of action under the Policy. Moreover, Michael has entered an *Alford* plea to one count of Attempted Sexual Abuse. Therefore, it has been conclusively established that a crime occurred related to sexual misconduct, and a jury must accept these facts as true. As a result, ANPAC has established that there is no potential coverage of bodily injuries connected to Michael's sexual misconduct under any theory of liability. Unlike the bodily injuries at issue in *Benjamin*, these bodily injuries inevitably fall within one or more of the Policy's exclusions because they were either intentional and expected, or they arose out of the criminal act and resulted from the sexual misconduct of an insured. Consequently, ANPAC has no duty to defend the Sexual Misconduct Causes of Action and the Twelfth Cause of Action (Civil Conspiracy) for any of the defendants.[79]

Just as in *Benjamin*, however, the Mixed Causes of Action allege some bodily injuries under alternative theories of liability for the same source of conduct. These alleged bodily injuries may fall within the Policy's scope of coverage. For example, a jury may find that James and Sherrie

---

[79]This holding eliminates ANPAC's duty to defend Michael against any claims in the Underlying Lawsuit. Moreover, as previously noted, Amie is not an insured under the Policy, and, therefore, ANPAC has no duty to defend her against any claims in the Underlying Lawsuit.

threatened and manipulated their granddaughter. Threats and manipulations, however, can lead to expected and intentional bodily injury or unintentional and unexpected bodily injury. Consequently, a reasonable jury could conclude that James and Sherrie merely acted negligently rather than intentionally. It also could conclude that the alleged threats and manipulations did not arise out of any criminal act of any insured, nor result from any sexual misconduct. Were a jury to make these findings, none of the Policy exclusions would apply, and ANPAC would have to provide coverage under the Policy. Consequently, ANPAC has a duty to defend the Mixed Causes of Action, but only to the extent they address bodily injuries exclusively attributable to James and Sherrie's alleged threats and manipulation.[80] Insofar as the Mixed Causes of Action address bodily injuries connected to Michael's sexual misconduct, however, they are outside of the Policy coverage, and ANPAC has no duty to defend them.

Although the court has determined that ANPAC must defend the threat and manipulation claims asserted under the Mixed Causes of Action, if ANPAC could establish that all claimed bodily injuries arose from Michael's sexual misconduct, ANPAC's duty to defend would end. Moreover, if ANPAC could establish that the claimed injuries exclusively attributable to the alleged threats and manipulation have no appreciable physical manifestations, its duty to defend likewise would end since such injuries would not qualify as "bodily injuries" under the Policy.

## CONCLUSION

For the foregoing reasons, ANPAC's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The court grants summary judgment on all allegations of bodily injury relating to Michael's sexual misconduct. Therefore, ANPAC owes no duty to defend the Sexual

---

[80]*Sharon Steel*, 931 P.2d at 133 (citation omitted).

19

Misconduct Causes of Action and the Twelfth Cause of Action (Civil Conspiracy). Moreover, ANPAC owes no duty to defend the Mixed Causes of Action insofar as they allege bodily injuries in connection with Michael's sexual misconduct. The court denies summary judgment on the Mixed Causes of Action to the extent they allege bodily injuries in connection with the alleged threats and manipulation leading to S.R.C.'s recantation. As a result, ANPAC owes a duty to defend James and Sherrie against these causes of action on the aforementioned basis.[81]

DATED this 21st day of June, 2010.

BY THE COURT:

_Clark Waddoups_
Clark Waddoups
United States District Judge

---

[81] The court recognizes that this holding may complicate the allocation of costs in defending the Underlying Lawsuit. ANPAC and the defendants of the Underlying Lawsuit must allocate these costs in a manner consistent with this memorandum decision and order.